IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMOS BROWN, III, | : | CIVIL ACTION |
| | : | NO. 12-4827 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| HAHNEMANN UNIVERSITY HOSPITAL | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J. May 21, 2014

Plaintiff Amos Brown, III, brings this pro se medical malpractice action against Defendant Hahnemann University Hospital ("Hahnemann"), alleging that Hahnemann negligently inserted an intravenous catheter ("IV") in his arm, causing significant injuries. The parties have filed cross-motions for summary judgment, and, for the reasons that follow, the Court will deny Brown's motion and grant Hahnemann's motion.

## I. FACTUAL BACKGROUND

Plaintiff Amos Brown is a state inmate currently being housed at the Liberty Management Services halfway house in Philadelphia, Pennsylvania. On approximately July 23, 2012, Brown reported to Hahnemann's emergency room with complaints of chest pain. Brown alleges that, during his hospital admission,

Hahnemann staff negligently inserted an IV into his arm. He says that the IV caused him pain and discomfort for several hours. Brown reported those symptoms to his nurses, but no changes were made. He was later transported to a lab to receive a CAT scan, at which point a hospital staff member used the IV to administer a contrast solution. Brown's pain immediately escalated, and the staff member examined the IV and discovered that it was inserted into Brown's arm tissue instead of his vein. Brown says that the improper insertion of the IV caused substantial pain, swelling, discoloration of his hand and fingers, and tingling sensations. He further alleges that the hospital staff made no effort to treat his complaints and did not administer any medication prior to his discharge from the hospital that same day. Brown's hospital discharge summary states that there was "no redness/swelling" at the IV site, but Brown asserts that statement is incorrect. See Pl. Mot. Summ. J., Ex. 4, Hahnemann Discharge Summary, ECF No. 33.

The day after his discharge from Hahnemann, Brown reported to Temple University Hospital ("Temple") with complaints of pain and swelling at the site of the IV. The doctor's note from that visit indicates that Brown's arm did not "look severely swollen or infected," but the treating physician prescribed Brown an antibiotic and pain medication. See Pl. Mot. Summ. J., Ex. 1, Temple Univ. Hosp. Discharge Instructions, ECF

No. 33. Brown asserts that, since that time, he has continued to experience swelling, pain, and discoloration in his arm and hand.

## II. PROCEDURAL HISTORY

Brown initiated this action on August 22, 2012, by filing a request to proceed in forma pauperis. ECF No. 1. That request was granted, and Brown subsequently filed his Complaint, bringing claims of inadequate medical care under the Eighth Amendment and medical malpractice under Pennsylvania state law. ECF No. 5. The Court dismissed Brown's Eighth Amendment claim with prejudice on January 18, 2013, but it allowed him to proceed on his medical malpractice claim by filing a Certificate of Merit in accordance with Rule 1042.3 of the Pennsylvania Rules of Civil Procedure. ECF No. 13. Rule 1042.3 requires a medical malpractice plaintiff to either provide an expert witness's statement explaining how the applicable standard of care was breached or certify that such expert testimony is unnecessary under the circumstances. Pa. R. Civ. P. 1042.3(a).

Brown subsequently filed a Certificate of Merit asserting that expert testimony from a medical professional was unnecessary in his case. ECF No. 14. In his Certificate, Brown also attempted to re-litigate the Eighth Amendment issue. Hahnemann responded to the Certificate, contending that the

Court should reject it because the evidence in this case requires expert analysis. ECF No. 18. The Court denied Hahnemann's request, noting that it lacked the authority to reject a Certificate of Merit on that basis. Order, Mar. 28, 2013, ECF No. 20. Nonetheless, the Court rejected Brown's Certificate to the extent it sought reconsideration of the earlier order dismissing the Eighth Amendment claim. Id. The case then proceeded to discovery.

On June 26, 2013, Hahnemann filed a motion for summary judgment. ECF No. 26. Soon thereafter, the Court received notification that Brown was being transferred to a different correctional institution, and so it placed the case in suspense pending Brown's arrival at his ultimate destination. Order, July 31, 2013, ECF No. 28. Brown notified the Court that he was ready to proceed on January 31, 2014 (ECF No. 30), and an appropriate scheduling order was issued (ECF No. 32). Brown then filed a response and counter-motion for summary judgment (ECF No. 33), and each party filed a reply (ECF Nos. 35, 36). Both motions for summary judgment are now ripe for resolution. Brown has also filed motions for the appointment of counsel[1] (ECF No. 39) and for the appointment of a private investigator (ECF No. 37).

[1] Brown previously filed a motion for appointment of counsel on April 30, 2013, which the Court denied without prejudice because it was unable consider the relevant factors at

## III. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who

---

that early stage in the litigation. See Order, May 1, 2013, ECF No. 25.

must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

The guidelines governing summary judgment are identical when addressing cross-motions for summary judgment. See Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008). When confronted with cross-motions for summary judgment "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Schlegel v. Life Ins. Co. of N. Am., 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (1998)).

## IV. DISCUSSION

### A. Defendant's Motion for Summary Judgment

Hahnemann argues that it is entitled to summary judgment because Brown cannot establish a prima facie case of medical negligence. Specifically, Hahnemann asserts that expert testimony is needed in order for Brown to show that Hahnemann breached its duty to Brown and that the breach proximately caused his injuries. Because Brown has failed to produce any such expert testimony, Hahnemann contends that his claim cannot succeed as a matter of law.

Under Pennsylvania law, medical malpractice is "broadly defined as the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." Toogood v. Rogal, 824 A.2d 1140, 1145 (Pa. 2003). Courts have broken that definition down into the following elements, which parallel the elements of an ordinary negligence action: (1) the physician owed a duty to the patient; (2) the physician breached the duty; (3) the breach was the proximate cause of the harm suffered; and (4) the damages suffered were a direct result of the harm. Hightower-Warren v. Silk, 698 A.2d 52, 54 (Pa. 1997). "Because the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons[,] a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation, and the extent of the injury." Toogood, 824 A.2d at 1145. In other words, the general rule under Pennsylvania law is that expert testimony is required in order for a plaintiff to establish the elements of a prima facie case of medical malpractice.

There is a "very narrow exception" to the expert testimony requirement, however, which applies when "the matter is so simple or the lack of skill or care so obvious as to be

within the range of experience and comprehension of even non-professional persons." Id. (quoting Hightower-Warren, 698 A.2d at 54 n.1). As the Pennsylvania Supreme Court explained in Toogood, that exception must be "carefully limited," because "to say whether a particular error on the part of a physician reflects negligence demands a complete understanding of the procedure the doctor is performing and the responsibilities upon him at the moment of injury." Id. at 1149. In other words, it is not enough to establish that a medical provider made a mistake, or that an injury occurred. Medicine is not a perfect science, and unfortunately negative outcomes occur in medical procedures even when the greatest care is taken. Id. at 1147. There is also no requirement that physicians be infallible, "and making a mistake is not negligence as a matter of law." Id. at 1150. Thus, "to hold a physician liable, the burden is upon the plaintiff to show that the physician failed to employ the requisite degree of care and skill." Id. A plaintiff can do that without expert testimony only when the physician's failure is clear even to a non-professional. When, as here, both the standard of care and causation are at issue, the defendant's lack of skill or care and the causal relationship must be obvious. Grossman v. Barke, 868 A.2d 561, 567 (Pa. Super. Ct. 2005).

Brown asserts that he has met that standard. He points to

the treatment he received at Temple as clear evidence that Hahnemann's failure to provide any such treatment "fell far below the acceptable professional standard of care required by law." Pl. Mot. Summ. J. 6. Put another way, Brown says that, because he was given antibiotics and pain medication the day after the IV was improperly inserted, it is obvious to a layperson that he should have been given those medications during his stay at Hahnemann, and that Hahnemann's failure to respond to his concerns constitutes a breach of the standard of care. He also implicitly suggests that the negative outcome itself - that is, Hahnemann's failure to properly place the IV - was clearly the result of medical negligence and clearly caused the injuries he now complains of.

But, contrary to Brown's assertions, this matter is not so simple as to fall within the very narrow category of cases in which the medical provider's lack of care or skill is obvious even to a layperson. Here, the evidence shows only that Hahnemann incorrectly inserted an IV and did not prescribe Brown any medication to treat the complained-of pain and swelling. Absent expert testimony, it is unclear whether Hahnemann's failure to correctly insert the IV was the result of negligence, or whether it was simply an "accidental occurrence" that could have occurred even with proper care. See Toogood, 824 A.2d at 1151 ("[E]xpert testimony is necessary to prevent a finding of

liability for a simple mistake of judgment, failure of treatment, or an accidental occurrence.”). It is also not obvious whether Hahnemann’s reaction to Brown’s complaints of pain was reasonable. Although Brown considered his pain and other symptoms to be severe, it may be that those experiences are typical and would not necessarily have prompted a reasonable physician to administer any medication. Brown’s treatment at Temple the following day does not shed any additional light on that issue. His condition may have changed, prompting a need for treatment that was not apparent the day before. Moreover, the fact that two physicians recommend different courses of action does not – standing alone – suggest that one of those physicians was negligent.

At base, this case is a classic medical malpractice action, in which a plaintiff claims that an injury he experienced after medical treatment was caused by the negligence of his physician. It is not enough in such cases to show an adverse outcome that a later physician deemed serious enough to treat. Rather, a plaintiff must show that the original treating physician “failed to employ the requisite degree of care and skill.” Id. at 1150. Generally speaking, laypeople do not know the skill or care expected of medical professionals in a given situation, nor do they know if an injury or adverse outcome reveals that the requisite level of care was not followed. That

is the situation here. Although it may be possible for a non-professional to conclude that Brown experienced pain, swelling, and other adverse outcomes because of the IV placed by Hahnemann, it does not necessarily follow that the care he received was substandard in any way. Accordingly, Brown's situation does not fall within the narrow exception to the general rule that a plaintiff cannot establish a prima facie case without expert testimony. Brown's medical malpractice claim therefore fails as a matter of law, as he has not offered any expert testimony in support of his claim.

B. Plaintiff's Motion for Summary Judgment

Because Brown's claim fails as a matter of law, he has not presented evidence upon which a reasonable factfinder could find in his favor. The Court will therefore deny Brown's motion for summary judgment.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment, deny Plaintiff's motion for summary judgment, and enter judgment in favor of Defendant and against Plaintiff. An appropriate order follows.